UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

ELIZABETH P.,[1]                                                         03:19-cv-01269-JR

                                    Plaintiff,

                                                                         OPINION AND ORDER

                    v.

COMMISSIONER OF SOCIAL SECURITY,

                                                      Defendant.

Russo, Magistrate Judge:

    Plaintiff brings this proceeding to obtain judicial review of the Commissioner's final

decision denying plaintiff's applications for disability insurance and supplemental security income

benefits.  Plaintiff asserts disability beginning February 1, 2013, due to a seizure disorder.  Tr. 343,

381.  After a hearing held on August 1, 2018, an Administrative Law Judge (ALJ) determined

plaintiff was not disabled. Tr. 42, 19-31.

---

[1] In the interest of privacy, this Order uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this Order uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION AND ORDER

Plaintiff contends the ALJ erred by: (1) failing to conduct a proper non-compliance with treatment analysis; (2) rejecting the opinion of treating neurologist, Dr. W.B. Smith; and (3) failing to include a minimum limitation of missing work due to seizures in the residual functional capacity (RFC) assessment.

A.    Non-Compliance with Treatment Analysis

Plaintiff asserts the ALJ denied benefits because plaintiff failed to comply with treatment for her seizure disorder.  Indeed, a casual review of the ALJ's findings seem to suggest failure to comply with treatment prevented a finding of disability:

> The claimant alleges that she has at least two convulsive seizures a month, which would meet the listing [of impairments 11.02 regarding seizures once a month for three consecutive months despite adherence to prescribed treatment]. Her neurologist also reported that she would meet the listing (23F/1). However, the medical expert testified that the claimant's substance use would have interfered with her treatment for seizures, which means that she was not adhering to prescribed treatment. As discussed more below, the medical expert's testimony is persuasive.

Tr. 23.

Even if an ALJ does not expressly purport to deny a claim that plaintiff failed to follow a prescribed course of treatment, if the analysis significantly relies on the finding that the failure to follow treatment causes the condition to be worse, then consideration of SSR 82-59 may be required.  See Ibarra v. Comm'r of Soc. Sec. Admin., 92 F. Supp. 2d 1084, 1087-88 (D. Or. 2000). Here, the ALJ did not state that absent the finding that plaintiff failed to follow treatment, plaintiff would be disabled.  Indeed, the ALJ did not find that plaintiff was disabled but for her failure to comply with treatment.  As explained below, the ALJ found that plaintiff's credibility lacking regarding the frequency of her seizures and specifically her allegations that she suffered frequent seizures despite treatment.  This is an issue separate from the alleged error raised by plaintiff.

Pursuant to Agency policy applicable at the time of the ALJ's decision, "[a]n individual who would otherwise be found to be under a disability, but who fails without justifiable cause to follow treatment prescribed by a treating source which the Social Security Administration (SSA) determines can be expected to restore the individual's ability to work, cannot by virtue of such 'failure' be found to be under a disability." SSR 82-59 available at 1982 WL 31384.  However, a determination that an individual has failed to follow prescribed treatment must entail following:

> 1. The evidence establishes that the individual's impairment precludes engaging in any substantial gainful activity (SGA) or, in the case of a disabled widow(er) that the impairment meets or equals the Listing of Impairments in Appendix 1 of Regulations No. 4, Subpart P; and
> 2. The impairment has lasted or is expected to last for 12 continuous months from onset of disability or is expected to result in death; and
> 3. Treatment which is clearly expected to restore capacity to engage in any SGA (or gainful activity, as appropriate) has been prescribed by a treating source; and
> 4. The evidence of record discloses that there has been refusal to follow prescribed treatment.
> Where SSA makes a determination of "failure," a determination must also be made as to whether or not failure to follow prescribed treatment is justifiable.

Id.[2]

Plaintiff asserts the ALJ failed to conduct this analysis because the ALJ failed to first make a finding that plaintiff is disabled.  The ALJ, however, concluded plaintiff is not disabled and rejected her testimony to the contrary, including seizure frequency:

> The claimant alleges that she stopped working in January 2013 due to her seizure disorder (3E). However, it appears that her first seizure occurred in March 2013, which is inconsistent with the date of the alleged onset of disability (see 3F/2). This inconsistency suggests her statements regarding her alleged disability are not entirely reliable. She also had a sporadic work history before the alleged onset of disability, which suggests her unemployment during the period at issue may be related to other reasons such as her significant history of polysubstance use.
>
> As noted above, the claimant's first seizure occurred in March 2013 when she was pregnant (see 2F/48, and 3F/2). At that time, she was being weaned from methadone, Norco, and Xanax (2F/48). She also tested positive for cocaine use

---

[2] SSR 18-3p superseded SSR 82-59 and applies on or after October 29, 2018.  SSR 18-3p available at 2018 WL 4945641.  The ALJ issued his decision on September 14, 2018.  Tr. 31

around the time of the first seizure, and she reportedly had a significant history of using cocaine and other substances (see 2F/l, 7). The medical expert, Dr. Goldstein, testified that the claimant's substance use was essentially nonadherence to a course of treatment. He testified that the claimant appeared to have fair control of her seizures, with less than one convulsive seizure episode a month, when adhering to treatment, which seems persuasive given the evidence in this decision.

The evidence shows some inconsistency in her reports of seizure frequency. She reported having had a seizure in May 2013 (see IF/22, and 3F/22). However, the following month indicated that she did not have seizures in the interval between appointments, and she did not indicate having additional seizures until September 2013 (see IF/26, 29, 37, 39). She reported a seizure in October 2013, but in December 2013 and January 2014, she again reported having no seizure activity in the intervals between appointments (IF/51, 43, 47). The reports of seizure frequency from this time is inconsistent with the claimant's allegation of having 1-2 seizures a month even when adhering to treatment.

The evidence shows some inconsistency in her reports of seizure frequency. She reported having had a seizure in May 2013 (see IF/22, and 3F/22). However, the following month indicated that she did not have seizures in the interval between appointments, and she did not indicate having additional seizures until September 2013 (see IF/26, 29, 37, 39). She reported a seizure in October 2013, but in December 2013 and January 2014, she again reported having no seizure activity in the intervals between appointments (IF/51, 43, 47). The reports of seizure frequency from this time is inconsistent with the claimant's allegation of having 1-2 seizures a month even when adhering to treatment.

She reported in July 2014 that she had not had a seizure in the last two months, which is inconsistent with her report of seizures in May-June 2014 (7F/36). She saw a neurologist in October 2014, and reported having seizures every 1-2 weeks (12F/2). An EEG in January 2015 showed signs of epilepsy, and her seizure medication was changed to Topamax (12F/6, and 13F/l). The claimant appears to benefit from treatment with Topamax, and she testified that the medication "works wonders." She did not report seizure occurrences until September 2015 (14F/4, 7). At that time, it was noted that her seizures had been controlled with Topamax, but she had not taken the medication for two weeks (see 14F/7). This report strongly suggests her seizures are controlled when she adheres to her treatment regimen.

She reported an increase in seizures in March 2016 to a primary care provider, but it was noted that she was not on medication for seizures, and her seizures had been stable when she was on medication (15F/21). She also tested positive for methamphetamines, and methamphetamines including opioids, and did not test positive for Clonazepam, which was prescribed for her seizures and anxiety (15F/21). As noted above, the medical expert reported that the use of substance such as methamphetamine and cocaine was non-adherence to treatment.

She followed up with a neurologist in July 2016 and reported that she had about one seizure a month (19F/10, 12). The neurologist thought that her dose of Topamax was too low and increased the medication (id.). After this, the claimant did not see a healthcare provider for seizures until June 2017, when she established care with a new neurologist (see 24F/28). The limited course of treatment in 2017 is inconsistent with the claimant's allegations of disabling seizures. A drug screen from May 2017 was positive for cocaine and methamphetamines, and negative for the Clonazepam that was prescribed for seizures (24F/11). The drug screen strongly suggests that the claimant's substance use and non-adherence to seizure treatment was ongoing in the 2016-2017 period. She also was assessed with severe opiate dependence in mid-2017 (24 FI 46-4 7).

The claimant saw a new primary care provider in May 2017, who raised concerned about the claimant's use of Clonazepam and Soma, which are both medications with a potential for abuse, and it appears that her Clonazepam was not refilled (24F/25-27). She saw neurologist W. Brewster Smith, MD, in June 2017 (see 24F/28-29). She reported having 1-2 seizures a month while on Topamax, but she also indicated that she had been seizure free for three months until she ran out of Clonazepam (id.). The claimant denied using any substances other than cannabis, and Dr. Smith refilled her Clonazepam for her (id.). She reported having a seizure in August 2017 while in jail, and it was thought that this was likely from Benzodiazepine withdrawal (24F/52, 54).

She followed up with her neurologist, Dr. Smith, in January 2018 (24F/59-61). The claimant reported that she had not used illicit substances in three months, but was having 1-2 seizures a month while adhering to her treatment (id.). She also disclosed to Dr. Smith that she had used heroin from 2014-2015 (id.). This report seems inconsistent with the claimant's testimony that she relapsed with substance use in 2015 after her boyfriend died, which suggests her statements regarding the extent of her substance use are not entirely reliable. Moreover, the evidence shows a methamphetamine binge in October 2017 (24F/56). Thus, there was not really a three-month period in late 2017-early 2018 of adherence to treatment (i.e. without substance use), in which the claimant continued to have seizures at least once a month. The evidence does not document treatment for seizures or reports of seizure occurrences after January 2018.

Tr. 25-27.

While the ALJ did note plaintiff's seizures were well-controlled with medication, he did so in the context of finding that plaintiff's credibility regarding the limiting effects of her seizures was not credible. He did not make that finding in the context of a failure to follow treatment prescribed by a treating source, which can be expected to restore her ability to work.  Indeed, as

noted above, the ALJ specifically found she stopped working before her first seizure even occurred, she subsequently sought limited treatment inconsistent with the allegations of disabling seizures, and she had a sporadic work history.[3]  Although the ALJ did find non-adherence to treatment, it was in the context of finding that non-adherence demonstrates that the seizure disorder was less severe than alleged  by plaintiff.  See Johnson v. Comm'r of Soc. Sec. Admin., 2013 WL 632104, at *20, 21 (N.D. Tex. Feb. 4, 2013), report and recommendation adopted sub nom. Johnson v. Astrue, 2013 WL 628561 (N.D. Tex. Feb. 20, 2013) (ALJ appropriately concluded that plaintiff's failure to take her medications as prescribed lessened her credibility regarding the symptoms and pain she alleged and did not need to resort to SSR 82-59).

Plaintiff does not assert the ALJ erred in discounting plaintiff's subjective symptom testimony.  Because the ALJ did not resort to disregarding plaintiff's disability pursuant to SSR 82-59 only because she failed to follow a successful prescribed course of treatment, the ALJ did not err in failing to conduct the analysis dictated by SSR 82-59.  The ALJ, instead, discussed numerous clear and convincing reasons, supported by substantial evidence in the record, for disregarding plaintiff's allegations of the debilitating nature of her seizure disorder.  See, e.g., Tommasetti v. Astrue, 533 F.3d 1035, 1040 (ALJ properly rejected claimant's subjective complaints where medical records showed that she responded favorably to medication); Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (A poor work history also provides clear and convincing reasoning to discount a plaintiff's testimony); Hanson v. Colvin, 2017 WL 2432159, at *9 (D. Or. May 2, 2017) (plaintiff's drug-seeking behavior was a clear and convincing reason to discount the plaintiff's symptom testimony); Stephanie, T. v. Saul, 2020 WL 1984893, at *7 (D.

---

[3] The ALJ provided further reasons for rejecting plaintiff's subjective symptom testimony with respect to her alleged mental impairments and pain including drug seeking behavior, and activities of daily living such as driving despite allegations of an inability to do so because of her seizures.  Tr. 27-28.

Or. Apr. 27, 2020) (activities of daily living are a specific, clear, and convincing reason to discount plaintiff's subjective symptom testimony).[4]

B.      Dr. W.B. Smith

On January 8, 2018, Dr. Smith opined plaintiff has "severe medically intractable epilepsy and continues to have 1-2 grand mal seizures per month despite standard anti-epileptic drug therapy with topiramate." Tr. 925. Dr. Smith further opined plaintiff "meets Social security administration listing of impairments criteria for total disability due to uncontrolled epilepsy. I believe this significant disability will persist for 1 year or longer." Id.

At plaintiff's disability hearing. Dr. Steven Goldstein testified he reviewed plaintiff's medical record and opined that on appropriate medication, plaintiff's seizures are well-controlled, but that substance abuse exacerbates plaintiff's seizure problem. Tr. 47-49. Dr. Goldstein also noted only sporadic treatment and that using cocaine and amphetamines can also cause seizures. Tr. 50.

The ALJ rejected Dr. Smith's opinion noting plaintiff provided Dr. Smith with an inconsistent history of drug abuse.[5] The ALJ also rejected the opinion because it was inconsistent with the medical record showing plaintiff's seizures were well-controlled with medication and the record of substance abuse interfering with treatment. Tr. 29. Although plaintiff disagrees that her seizures were controlled with medication, there is substantial evidence in the record to support the ALJ's conclusion as noted above in his discussion regarding plaintiff's credibility above. There is also substantial evidence, in the record, of the interference substance abuse had on plaintiff's

---

[4] Plaintiff asserts that if the failure to comply with treatment issue is removed from the decision, the ALJ would find her disabled. However, as noted, the ALJ provided other reasons for discounting plaintiff's allegations of disabling seizures beyond such failure. To the extent plaintiff asserts the record does not demonstrate a failure to follow treatment or that she would improve if she followed treatment, the ALJ cited substantial evidence in the record to support his finding that plaintiff's credibility in this regard was wanting.
[5] The Commissioner concedes, however, that Dr. Smith knew about plaintiff's drug history to some extent.

treatment.  The ALJ did not err in rejecting Dr. Smith's opinion.  See Tommasetti, 533 F.3d at 1040 (inconsistencies between an opinion and medical records is a specific and legitimate reason to discount treating physician); Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006) ("[i]mpairments that can be controlled effectively with medication are not disabling"); Peterson v. Berryhill, 2018 WL 3045732, at *2 (W.D. Wash. June 20, 2018) (ALJ may discount medical opinions that fail to properly account for the impact of substance abuse on a claimant's limitations); Williams v. Colvin, 2014 WL 1017576, at *5 (D. Idaho Mar. 17, 2014) (Although certain references in the record may not have been given the weight petitioner contends were warranted, when the evidence can reasonably support the ALJ's conclusion, there is no place for the court to substitute its judgment for that of the ALJ's, even if the court were persuaded that petitioner's assessment of the record was the better of two different viewpoints).

C.      RFC

The ALJ's RFC determination limited plaintiff to light work except that she should avoid unprotected heights and hazards, vibration, transactional work with the public, and more than occasional interaction with co-workers.  Tr. 24.  Plaintiff argues the ALJ failed to include a limitation of missing work due to seizures.  However, as noted above, the ALJ appropriately discounted the severity of plaintiff's alleged seizure disorder.  Moreover, the ALJ specifically stated:

> The claimant's seizures are accounted for in the residual functional capacity by having her avoid exposure to hazards. The claimant's seizure disorder is further accounted for by limiting her to the light exertional level, as carrying objects more than 20 pounds could be dangerous to the claimant and others working around her if she were to have a seizure.

Tr. 27.

Plaintiff asserts the record supports her preferred interpretation that she would at least have seizures every few months resulting in a medical emergency at work causing missed work and an inability to maintain employment.  Tr. 62, 894-901.  However, the ALJ's assessment is also supported.  The ALJ need not accept limitations asserted by plaintiff or medical opinion and incorporate them into the RFC where rejection of the testimony and opinion are supported by substantial evidence.  Harvey v. Astrue, 2011 WL 4370033, at *8 (D. Idaho Sept. 19, 2011).  The ALJ did not err in his RFC assessment.

## CONCLUSION

Pursuant to Sentence 4 of 42 U.S.C. § 405(g), the decision of the Commissioner is affirmed and this action is dismissed.

DATED this 8th day of June, 2020.

/s/ Jolie A. Russo
JOLIE A. RUSSO
United States Magistrate Judge